```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| NEVALLE WADE | : |
|  | : |
| v. | : Civil Action No. DKC 2006-1603 |
|  | : |
| CARLOS M. GUTIERREZ | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment retaliation case is the motion of Defendant Carlos M. Gutierrez, Secretary of the United States Department of Commerce, to dismiss or, in the alternative, for summary judgment. (Paper 8). Because the court will rely on materials outside the pleadings, the motion will be treated as one for summary judgment. The issues are fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the motion will be denied.

**I. Background**

The following facts are either undisputed or taken in the light most favorable to Plaintiff Nevalle Wade.

In 1995, Plaintiff was hired by the Census Bureau, a bureau within the United States Department of Commerce, as a GS-4, Step 10 (GS-4/10) Office Automation Clerk. To assist with the 2000 decennial census, Plaintiff was assigned to the Decennial Management Division (DMD) as a term employee in March 1999. The

assignment was a temporary promotion with a not-to-exceed (NTE) date of September 30, 2001. (Paper 8, Ex. 10). Between March 1999 and October 2002, Plaintiff was temporarily promoted and then reverted to her permanent GS-4/10 position at least five times. (*See id*. Ex. 12). On October 6, 2002, Plaintiff received a temporary promotion to a GG-11/1 decennial specialist position with an NTE date of November 2, 2002.[1] (*Id*. Ex. 12, at 12). Plaintiff's NTE date was extended twice; the ultimate NTE date was September 20, 2003. (*Id*. at 13-14). On September 21, 2003, Plaintiff again reverted to her permanent GS-4/10 position. (*Id*. at 16).

Plaintiff asserts that in January 2003, her direct supervisor, Jane Ingold, told her that her third level supervisor, Teresa Angueira, DMD Chief, had decided to make Plaintiff's GG-11 position permanent. (Paper 11, Wade Decl. ¶ 4). Several months later, in May 2003, Plaintiff's second level supervisor, Edison Gore, informed her that the agency would not make her position permanent and "[i]nstead was going to downgrade [her] position and advertise it as a permanent GS-07, Program Assistant." (*Id*. ¶ 6). Ms. Angueira stated that Plaintiff's GG-11 position was not made permanent because she was a decennial specialist and all decennial operations were ending, so there was

---

[1] For the purposes of this Memorandum Opinion, there is no significant difference between the "GS" grade series and the "GG" grade series.

no need for her specialized skills. (Paper 8, Ex. 18, Angueira Decl., at 3). Furthermore, Defendant had a policy that no temporary promotions would be made permanent without further competition. (*Id*. Ex. 15). Ms. Angueira instructed Ms. Ingold to draft a description for a GS-7/8 position, taking into account the needs of the branch, the functions of the position, and the level and magnitude of the functions needed. (*Id*. Ex. 18, Angueira Decl., at 5). The proposed position was not related to the decennial census.

Ms. Ingold met with Plaintiff and JoAnn Norris,[2] a GS-12 decennial specialist, and told them that "DMD could not justify retaining a GS-11 position and that [she] had been instructed to write a GS-7/8 position description . . .[and] that they would have an opportunity to apply and compete for the position." (*Id*. Ex. 16, Ingold Decl., at 5). Plaintiff then sought EEO counseling because she thought Defendant's decision not to make her GG-11 position permanent was based on her race, African American. (Paper 11, Wade Decl. ¶ 8). It appears that Ms. Norris also sought EEO counseling. (*See* paper 8, Ex. 18, Angueira Decl., at 9 (stating ". . . supplemental information for the complaint of discrimination filed by Jo Ann Norris, Complainant.")).

---

[2] As a decennial specialist, Ms. Norris's temporary promotion was also ending in September 2003 and she was considered, along with Plaintiff, as a candidate for the possible GS-7 position. (Paper 8, Ex. 16, Ingold Decl., at 3-5).

3

Plaintiff states in her declaration that Ms. Ingold told her that Ms. Angueira said that she "was furious with [Plaintiff] for going to EEO and filing a race complaint" and that Plaintiff "would not get the grade 7 job or any other in the office because [she had] contacted EEO[.]"[3] (Paper 11, Wade Decl. ¶¶ 10-11). Ms. Ingold also admits telling Plaintiff that Plaintiff had opened a "Pandora's Box" by writing a letter to her Congressman, complaining about the alleged race discrimination. (Paper 8, Ex. 16, Ingold Decl., at 5).

Ms. Ingold stated that on July 2, 2003, within two days of being contacted by the EEO counselor regarding Plaintiff's

---

[3] Defendant summarily asserts that this statement is inadmissible hearsay and should not be considered by the court in ruling on the present motion. A statement is not hearsay if it was made by a party's agent or servant concerning a matter within the scope of the agency or employment, and it was made during the existence of the agency or employment relationship. Fed.R.Evid. 801(d)(2)(D). Federal common law rules of agency apply in determining the existence and scope of the agency relationship. *See Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F.Supp.2d 520, 530 (D.Md. 2001). Fed.R.Evid. 805 "allows hearsay within hearsay, and [the United States Court of Appeals for the Fourth Circuit has] previously extended the rule to include admissions within hearsay." *Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 620 (4th Cir. 1991). The evidence on the record indicates that Ms. Angueira's statement to Ms. Ingold and Ms. Ingold's statement to Plaintiff both fall within the purview of Fed.R.Evid. 801(d)(2)(D) and are thus admissible. Both speakers were supervisors and appear to be agents of Defendant; it is within the scope of their employment to decide whether to post new positions; and the statements were made while the speakers were employees of Defendant. Plaintiff's declaration testifying to Ms. Ingold's recitation of Ms. Angueira's statement will thus be admitted as evidence pursuant to Fed.R.Evid. 801(d)(2)(D) for the purposes of this motion for summary judgment.

4

complaint, she, Ms. Angueira, and Mr. Gore "considered the reaction of [her] staff to the posting of the [GS-7 position, and] . . . Ms. Angueira decided . . . not to post the position." (Paper 8, Ex. 16, Ingold Decl., at 5-6, 13). Ms. Angueira stated that she did not approve the GS-7 position because other, higher priority personnel needs had not been met. (*Id*. Ex. 18, Angueira Decl., at 5). Ms. Angueira explained further that she "did think it was unfortunate that both Ms. Norris and [Plaintiff] felt discriminated against, and that the job when posted would be favorable to [Plaintiff] and unfavorable to Ms. Norris. That, along with funding priorities, caused [her] to not give that position a high priority in the division's staffing." (*Id*. at 11). The GS-7 position was never posted.

In September 2003, after Plaintiff's temporary GG-11 promotion had expired, Defendant offered Plaintiff a temporary position with "secretarial and programmatic support" duties within DMD. (*Id*. Ex. 16, Ingold Decl., at 7). Plaintiff accepted the position. (*Id*.). The grade level of this temporary assignment is unclear from the record.

Plaintiff filed a complaint in this court on June 21, 2006, alleging that her employer, Defendant United States Department of Commerce, retaliated against her by deciding not to post the GS-7 position after she sought Equal Employment Opportunity (EEO) counseling in June 2003. (Paper 1 ¶¶ 8-9).

## II. Standard of Review

Defendants have moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment.  *See* Fed.R.Civ.P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact

and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

The elements of a retaliation claim under Title VII are: 1) the employee engaged in protected activity, 2) the employer took action that would be materially adverse to a reasonable employee or job applicant, and 3) there is a causal connection between the protected activity and the asserted adverse action. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007) (revising second element as required by *Burlington N. & Santa Fe Rwy. Co. v. White*, 126 S.Ct. 2405, 2408 (2006)). In determining whether the alleged retaliatory action is materially adverse as required for the second element, the court should ask whether it was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 126 S.Ct. at 2409. If the plaintiff makes such a showing, then the burden shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). The employee then has the opportunity to prove that the asserted reason is pretextual. *Id.; see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII").

It is undisputed that Plaintiff satisfies the first element of the *prima facie* case because she engaged in protected activity when she contacted the EEO counselor in June 2003.

Defendant argues that Plaintiff cannot satisfy the second element of the *prima facie* case because she cannot demonstrate that she applied for, and was denied, the GS-7 position.[4] Plaintiff asserts that Defendant's decision not to post the GS-7 position was an adverse employment action in and of itself.

Taking the facts in the light most favorable to Plaintiff, the following occurred.  In January, Defendant told Plaintiff that her GG-11 position would be made permanent.  In May, Defendant told Plaintiff that her GG-11 position would not be made permanent, but that she would have an opportunity to compete for a GS-7 position.  Although the GS-7 position would be posted, only two people, Plaintiff and Ms. Norris, were truly candidates. (Paper 8, Ex. 16, Ingold Decl., at 4-5).  In June, Plaintiff sought EEO counseling because she thought the decision not to make her GG-11 position permanent was based on race.  Two days after being contacted by the EEO counselor about Plaintiff's

---

[4] To the extent that Plaintiff is alleging a discriminatory failure to promote claim, her claim must fail. One of the elements that a plaintiff must prove to establish a *prima facie* case of discriminatory failure to promote is that she applied for the position in question, *see Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994), and Plaintiff did not apply for the GS-7 position because it was never posted. *See also Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 599 (D.Md. 2000) ("Plaintiff was not denied a promotion because there was no existing position for which she could have applied or to which she could have been promoted.").

complaint, Defendant decided not to post the GS-7 position. This action, in first proposing and then reneging on a plan to create a position for which two (and possibly only two) people, including Plaintiff, are likely candidates, when both of them had recently sought EEO counseling concerning the decisions not to make their temporary positions permanent, certainly could be seen as a penalty for filing the earlier complaint. Under these circumstances, a reasonable worker could well be dissuaded from making a charge of discrimination in the future. *See Burlington N.,* 126 S.Ct. at 2409.

Finally, Plaintiff has also produced evidence as to the third element, that there is a causal connection between her protected activity and the adverse action. Plaintiff claims that Defendant's decision not to post the job opening must have been in retaliation for her EEO activity because Ms. Ingold told her that Ms. Angueira stated that she was furious with Plaintiff for seeking EEO counseling and that she would not get the GS-7 job or any other job in that office. (Paper 11, Wade Decl. ¶¶ 10-11). Although Ms. Ingold stated in her own declaration that Ms. Angueira never discussed with her Plaintiff's EEO contact, and that the decision not to post the GS-7 position was not based on Plaintiff's EEO contact (paper 8, Ex. 16, Ingold Decl., at 13-14), at most this raises a dispute of material fact, which supports the denial of summary judgment. Furthermore, Ms. Ingold

10

admitted telling Plaintiff that she had opened a "Pandora's Box" by complaining to her Congressman about the perceived racial discrimination. (*Id*. at 5). A causal connection is further suggested by the temporal proximity of the decision not to post the GS-7 position and Plaintiff's EEO contact. Ms. Ingold stated that within two days of learning about Plaintiff's EEO contact, Ms. Angueira decided not to post the GS-7 position. (*Id*. at 6).

In its brief, Defendant does not argue that there was a legitimate, non-discriminatory reason for deciding not to post the GS-7 position. It states "[t]he Agency undertook to return the Plaintiff to her previous position, not because of her EEO activity, but they did so, just as they had done five previous times, because that was the action required by the NTE promotion." (Paper 8, at 18). In her lawsuit, Plaintiff does not challenge Defendant's decision not to make her GG-11 position permanent. Rather, she challenges its decision not to post the GS-7 position after she sought EEO counseling. Defendant's proffered reason does not address that question. Thus, Defendant has not met its burden to offer a legitimate, non-retaliatory reason for the adverse employment action.

**IV. Conclusion**

Defendant has not demonstrated that it is entitled to prevail as a matter of law on Plaintiff's retaliation claim and summary judgment is not appropriate at this time. Accordingly,

11

Defendant's motion for summary judgment will be denied. A separate Order will follow.

```
                      /s/
          DEBORAH K. CHASANOW
          United States District Judge
```